IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT

2008 OCT 31 A 8:31

CLERK JBurton

| | |
|---|---|
| CLARENCE BROWN, | ) |
| Plaintiff, | ) |
| v. | ) CV 108-114 |
| RONALD STRENGTH, Sheriff; W. JOHNSON, Major; and RICHMOND COUNTY JAIL, | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Coastal State Prison, in Garden City, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants.[2] Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

---

[1]The events comprising the basis for the above-captioned complaint occurred while Plaintiff was incarcerated at the Richmond County Jail.

[2]As noted by a simultaneously filed Order, the Court will consider both Plaintiff's original and amended complaint in this screening.

## I. BACKGROUND

*Liberally* construing Plaintiff's complaints, the Court finds the following. In his complaints, Plaintiff names as Defendants: (1) Ronald Strength, Sheriff, (2) William E. Johnson, Major, and (3) the Richmond County Jail ("the Jail").[3] (Doc. no. 5, p. 1). Plaintiff was an inmate at the Jail, housed on the west wing of the third floor ("west wing"), which is a medical wing for inmates with HIV-AIDS. (Id. at 6). Plaintiff asserts that he is a diabetic, and is HIV-AIDS positive. (Id. at 3, 12). Plaintiff alleges that cells 1 through 12 of the west wing are strictly used to house inmates with HIV-AIDS. (Id. at 5-6). Plaintiff argues that he was being discriminated against because inmates with HIV-AIDS are not permitted to be housed in any other area at the Jail. (Id.). Furthermore, Plaintiff states that he and other inmates who are HIV-AIDS positive do not have an option to choose where to be housed in the Jail. (Id. at 7). He further states that he was not allowed to be housed with inmates who were not HIV-AIDS positive, nor was he allowed to mingle with inmates who were not HIV-AIDS positive. (Id.).

Plaintiff compares the west wing with the medical wing on the first floor. (Id.). Purportedly, the medical wing on the first floor is "right across from medical," making the first floor medical wing more attractive than the west wing. (Id.). Plaintiff states that to the best of his knowledge, the inmates housed on the first floor medical wing have "some kind of sickness or [the] same kind of diseases [as] HIV-AIDS," and wonders why then, are the

---

[3]The caption of Plaintiff's amended complaint names Ronald Strength, et al., as Defendants. (Doc. no. 5). For purposes of this screening, the Court presumes the "et al." refers to William E. Johnson, Major, and the Richmond County Jail, Defendants named in Plaintiff's original complaint.

inmates housed on the west wing not housed on the first floor?" (Id.). Plaintiff is concerned that if he got sick, or sicker, the west wing, would not have provided Plaintiff with adequate medical assistance.[4] (Id. at 7-8). Plaintiff mentions being placed behind steel doors, with no intercom in the rooms (on the west wing), and that there is no way for officers or deputies to know if Plaintiff was in need of emergency care.[5] (Id.).

In addition, Plaintiff is concerned that he had no confidentiality/privacy concerning his illness. Plaintiff alleges, "Everybody knows [the] 3rd floor west wing cells 1 to 12 are only for housing inmates who are HIV-AIDS positive, which means Plaintiff [had] no confidentiality." (Id. at 6-7). Furthermore, Plaintiff alleges that the "pill books" for inmates who are HIV-AIDS positive are white and pink and have writing in big black letters that read "HIV-AIDS Pill Book." Plaintiff claims, "Nurses and Doctors Blatantly Reveal your medical condition in front of deputies and other inmates." (Id. at 6).

Plaintiff also alleges that a deputy at the jail, (an individual not named as a defendant in either his original or amended complaint) was deliberately indifferent to his health. (Id. at 15). He claims that as a result of this deputies actions, Plaintiff's medical treatment was delayed. (Id.). Plaintiff alleges that he spoke to Sergeant West concerning the deputies harassment, and notes that Sergeant West "did stop her from harassing Plaintiff." (Id.).

Plaintiff also makes allegations concerning the medical care in general at the Jail. He

---

[4] The Court notes that since the commencement of the above-captioned case, Plaintiff has been transferred to Coastal State Prison, in Garden City, Georgia. (Doc. no. 10).

[5] Plaintiff also claims that the Augusta Chronicle published an article detailing troubles that the Jail was having with malfunctioning elevators and broken door locks. (Doc. no. 5, p. 8). Plaintiff is concerned that he would have been "trapped" should the door lock jam, or elevator not work. (Id. at 9).

3

claims that on July 17, 21, and 22, 2008, he put in three sick call requests stating that he was having chest pains. (Id.). He claims that when he saw Nurse Lee (an individual not named as a defendant in either his original or amended complaint) concerning his chest pains, she instructed him to file another sick call request. (Id.). Plaintiff was seen by a nurse two and one half weeks later concerning his chest pains; however, at that time he informed the nurses that he was "all right now since medical took so long." (Id. at 12). Next, Plaintiff states that on August 11, 12, and 13, 2008, he put in three sick call requests concerning an abscess and/or boil. (Id.). Plaintiff notes that he was seen eight days later by a doctor, who told Plaintiff that the abscess occurred from brushing his teeth, and Plaintiff was given some salt and pain medication. (Id.). Plaintiff was dissatisfied with this diagnosis and treatment. (Id.). Plaintiff contends that "if medical [] had called Plaintiff 8 days earlier, the doctor would have seen it did not come from brushing Plaintiff's teeth." (Id.). However, Plaintiff does not provide any other explanation as to what he believes caused the abscess/boil other than his statment that he is a diabetic and HIV-AIDS positive and thus has serious medical needs. (Id.).

Lastly, Plaintiff makes general allegations that he and other inmates were being denied legal access to law books and the law library and cannot make "legal copies." (Id. at 14). Plaintiff further alleges that inmates have to make their own copies of any grievances that they file. (Id.). Plaintiff contends that he wrote grievances to Defendants Strength and Johnson and to Lieutenant Burk concerning the alleged segregation, discrimination, and depravation of access to the law library and law books. (Id. at 15). Plaintiff concludes by stating "they still never answer." (Id.). As relief, Plaintiff seeks monetary damages in the

amount of $1,300,000.00. (Id.).[6]

## II. DISCUSSION

### A. Segregation Based on HIV status

Plaintiff contends that he was discriminated against on the basis of his illness. He argues that he was discriminated against on the basis of his HIV-AIDS status because he is being housed in the west wing along with all other prisoners with HIV-AIDS. However, Plaintiff's claim does not form a basis for relief. In Harris v. Thigpen, 941 F.2d 1495 (11th Cir. 1991), the Eleventh Circuit held that, in the absence of any other allegations, the involuntary placement of HIV prisoners in separate HIV dorms does not violate the prisoners' constitutional rights. Id. at 1521. Further, any encroachment this segregation had on the privacy rights of inmates with HIV was reasonable in light of the "inmate interests at stake (both [HIV] and general population), and the difficult decisions that the [Department of Corrections] must make in determining how best to treat and control . . . the spread of a communicable, incurable, always fatal disease." Id. Therefore, placing Plaintiff in segregation due to his HIV-AIDS status was not unconstitutional, and Plaintiff has failed to state a claim upon which relief can be granted for his HIV-AIDS segregation.

### B. Deliberate Indifference

Plaintiff alleges that certain individuals, not named as defendants in the above captioned case, at the Jail delayed in getting him medical treatment. Here, Plaintiff does not allege that any of the named Defendants participated in or were aware of any of the events

---

[6]Although Plaintiff did not state his requested relief in his amended complaint, his original complaint provides that he seeks the above-mentioned damages.

5

surrounding Plaintiff's claim for deliberate indifference to his medical needs.

"Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit recently held, a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, No. 07-10518, 2008 WL 2875804, *4 (11th Cir. July 28, 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."))). Here Plaintiff has not alleged any action taken by a particular named Defendant. Thus, in the absence of an allegation of any connection between any actions of the named Defendants with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against these Defendants for deliberate indifference. Accordingly, this claim should be dismissed.

C.  **Access to the Courts**

Plaintiff also alleges that Defendants Strength and Johnson denied him access to the courts. (Doc. no. 5, p. 14). To state a viable denial of access to the courts claim, a Plaintiff must plead and prove actual injury to existing or contemplated litigation or nonfrivous (and therefore viable) claims challenging Plaintiff's sentence or conditions of confinement. Lewis v. Casey, 518 U.S. 343, 349-55 (1996); see also Wilson v. Blankenship, 163 F.3d 1284, 1291

(11th Cir. 1998) (emphasizing that an inmate's right to access the courts is only implicated where there is actual injury suffered "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement"). The Eleventh Circuit has clarified the requirements for pursuing a denial of access to the courts claim as follows:

> [A] plaintiff first must show actual injury before seeking relief . . . . This essential standing requirement means that [a defendant's] actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of [] deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of [a defendant].

Blankenship, 163 F.3d at 1290-91(citations omitted). Stated otherwise, there must be an allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, post conviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)).

Plaintiff merely states that he and other inmates were being denied legal access to law books and the law library and could not make "legal copies." (Doc. no. 5, p. 14). Plaintiff fails to allege facts which demonstrate that he had possibly viable claims that were negatively impacted by the denial of access to law books and the law library, as well as not being permitted to make "legal copies." As such, Plaintiff's denial of access to the courts claims should be dismissed.[7]

---

[7]Moreover, Plaintiff's allegations are extremely vague and conclusory. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (noting that vague and conclusory

7

### D. Procedures and Grievance Claim

To the extent Plaintiff alleges that his constitutional rights were violated by Defendants Strength and Johnson, because his grievances were mishandled or otherwise processed in a manner that did not comply with the grievance procedures, his claim must fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), aff'd, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate

---

accusations are insufficient to state a civil rights claim).

judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff states that he wrote grievances to Defendants Strength and Johnson concerning the alleged segregation, discrimination, and depravation of access to the law library and law books. (Id. at 15). Plaintiff concludes by stating "they still never answer." (Id.). However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances.... [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims against Defendants Strength and Johnson, regarding an alleged violation of the grievance procedures, fails to state a claim upon which relief can be granted.

E.   **No Liability Based on *Respondeat Superior***

To the extent that Plaintiff blames Defendants Strength and Johnson for the acts of their subordinates regarding Plaintiff's claims of deliberate indifference to his health, without alleging any personal involvement, his claims fail. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior*

9

or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, Plaintiff has not alleged that the above-named Defendants actually participated in Plaintiff's claims of deliberate indifference to his health; in fact, Plaintiff has not proffered any reason to support that these Defendants violated any of Plaintiff's constitutional rights.

Similarly, Plaintiff fails to allege a "causal connection" between the above-named Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[8] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal

---

[8]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has alleged neither with respect to the above-named Defendants. Accordingly, to the extent Plaintiff attempts to assert claims against Defendants Strength and Johnson in their supervisory capacities, the claims should be dismissed.

## F. The Richmond County Jail

Plaintiff has also sued the Jail. *Liberally* construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for relief against the Jail. That is, Plaintiff fails to set forth any allegations that the Jail - as an entity - is responsible for any possible constitutional violation and fails to explain how the Jail is capable of being sued for any improper actions that are alleged to have occurred as the result of the actions of a specific individual.[9] As such, Plaintiff fails to state a claim for relief against this Defendant.

## III. CONCLUSION

For the reasons set forth above, this Court **REPORTS** and **RECOMMENDS** that

---

[9]According to Fed. R. Civ. P. 17(b), the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held. . . ." Accordingly, in this case, Georgia law controls. The Georgia Supreme Court has explained that: "[i]n every suit there must be a legal entity as the real plaintiff and the real defendant. This state recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." Georgia Insurers Insolvency Pool v. Elbert County, 368 S.E.2d 500, 502 (1988) (quotation omitted). The Court is not aware of any applicable precedent for recognizing a jail as an entity capable of being sued.

Plaintiff's case be **DISMISSED** for failure to state a claim upon which relief can be granted, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 31st day of October, 2008, at Augusta, Georgia.

*[signature]*
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE