FILED
U.S. DISTRICT COURT

2008 DEC 20 P 1: 55

CLERK J Burton

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CLARENCE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 108-114 |
| | ) | |
| FRANCES TURNER,[1] Deputy Jailor and | ) | |
| CAROLINE LEE, Director of Nursing, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

At the time of the events giving rise to the above-captioned case brought pursuant to 42 U.S.C. § 1983, Plaintiff was an inmate incarcerated at the Richmond County Jail ("the Jail") in Augusta, Georgia. The case is now before the Court on the parties' cross motions for summary judgment. Specifically, separate motions for summary judgment have been filed by Defendant Lee (doc. nos. 60, 63, 65, 66)[2] and Defendant Turner (doc. no. 67), and Plaintiff has filed separate motions for summary judgment on his claims against Defendant Lee (doc. no. 75) and Defendant Turner (doc. no. 74). Plaintiff has responded to Defendants' motions (doc. nos. 74, 75), and each Defendant has filed a separate response to Plaintiff's

---

[1] Although listed on the docket as FNU Turner, this Defendant's first name is Frances. (See doc. no. 69.) The **CLERK** is **DIRECTED** to modify the docket accordingly.

[2] Defendant Lee has noted that a technical error resulted in several documents filed in support of her motion for summary judgment being docketed as separate motions for summary judgment. (See doc. no. 71.) However, she has clarified, and the Court recognizes, that she has filed only one motion for summary judgment. (See id.)

motions (doc. nos. 77, 78, 79, 80). For the reasons set forth below, the Court **REPORTS AND RECOMMENDS** that Plaintiff's motions for summary judgment be **DENIED**, that each Defendant's motion for summary judgment be **GRANTED**, that a final judgment be **ENTERED** in favor of Defendants Turner and Lee, and that this civil action be **CLOSED**.

I. FACTS

Plaintiff arrived at the Jail via transfer on June 18, 2008. (Doc. no. 74, Pl.'s Aff. I,[3] p. 14.) In his intake questionnaire, Plaintiff indicated that he was HIV-positive and suffered from diabetes, high cholesterol, and asthma. (Doc. no. 63-1, Lee Aff. ¶ 11.) During the time period relevant to this case, Defendant Lee, a registered nurse, was the Health Services Administrator ("HSA") at the Jail,[4] and Defendant Turner worked there as a tower jail guard on the floor where Defendant was housed. (Doc. no. 63-1, Lee Aff. ¶ 3; doc. no. 69, Turner Aff. ¶¶ 2-3.) In his amended complaint, Plaintiff alleged that Defendants Lee and Turner were deliberately indifferent to his serious medical needs. (See generally doc. no. 42.) Based on his allegations of delayed medical care and withholding medication, the Court allowed Plaintiff's claims against Defendants Lee and Turner to proceed.[5] (Doc. no. 45.) Because

---

[3]Plaintiff has submitted two affidavits, one with each of his motions for summary judgment. The Court will refer to the affidavit submitted with document number 74 as "Pl.'s Aff. I" and the affidavit submitted with document number 75 as "Pl.'s Aff. II."

[4]While Defendant Lee worked at the Jail during the time period relevant to this case, she was an employee of Correctional Medical Services, a private company under contract with the Jail to provide certain medical services. (Doc. no. 63-1, Lee Aff. ¶ 6.)

[5]The Court recommended that several other Defendants named in Plaintiff's original and amended complaints be dismissed from this case. (Doc. no. 46.) The Honorable J. Randal Hall, United States District Judge, adopted the Court's recommendation over Plaintiff's objections. (Doc. no. 51.)

2

Plaintiff's claims against Defendants are premised on distinct sets of factual allegations, the Court will set forth the facts pertaining to the claims against each Defendant in separate sections.

### A. Facts Relating to Plaintiff's Claims Against Defendant Turner

Plaintiff avers that he began trying to see a doctor upon arrival at the Jail on June 18, 2008, and had a doctor's appointment scheduled for June 23, 2008. (Doc. no. 74, Pl.'s Aff. I, p. 14.) Plaintiff maintains that he was unable to see a doctor that day – resulting in delayed treatment – because Defendant Turner would not let him out of his housing area. (Id.) According to Plaintiff, Defendant Turner stated that Plaintiff "was not moving fast enough," and incorrectly noted in the log book that Plaintiff refused to see the doctor. (Id. at 15.)

Defendant Turner disputes these allegations. First, Defendant Turner explains the procedure for calling inmates to medical appointments and her responsibilities as tower guard as follows:

> Each day, the nurses . . . provide the tower guard with a list of inmates who need to be seen by the jail nurse or taken to the medical unit. Each jail unit . . . has a set of double slider doors separating the inmate area from the other areas of the jail . . . . When the jail nurse informs the tower guard which inmates are to be taken to the medical unit or to be otherwise seen by the nurse, the guard calls out the names of the inmates for them to come to the slider door. When all inmates to be seen by medical are at the [first] slider door, the door is opened and the inmates step into the area between the two slider doors. When the initial slider doors close, then the other slider door is opened so that the inmates can be seen by the nurse or escorted to the medical unit . . . .

(Doc. no. 69, Turner Aff. ¶ 4.) Defendant Turner states that she called Plaintiff for his appointment on June 23, 2008 in accordance with this protocol, at which point Plaintiff began to clean his cell. (Id. ¶ 5.) Defendant Turner asserts that she called Plaintiff three

3

times without a response, and that Plaintiff eventually approached the first slider door when the nurse was ready leave with another inmate. (Id.) Defendant Turner further asserts that the nurse indicated, without urgency, that she would come back later to see Plaintiff. (Id.) According to Defendant Turner, her actions with regard to Plaintiff's June 23rd medical appointment were proper under the Jail's procedures. (Id. ¶ 6.)

Moreover, Defendant Turner states that she had no information that Plaintiff had any serious medical condition requiring immediate medical attention, and that her knowledge of Plaintiff's medical condition was limited to knowledge that he was likely HIV positive, since HIV positive inmates are generally housed in the unit where Plaintiff was housed. (Id.)

Plaintiff also claims that on July 21, 2008, Defendant Turner refused to open Plaintiff's cell for the 5:00 p.m. pill call, resulting in Plaintiff being unable to take his medications that day. (Doc. no. 74, Pl.'s Aff. I, p. 14.) According to Plaintiff, Defendant Turner stated that she would not open Plaintiff's cell "because Plaintiff would not close his room door." (Id.)

Defendant Turner likewise disputes Plaintiff's allegation that she refused to allow Plaintiff out of his cell for pill call on July 21, 2008. According to Defendant Turner, her only responsibility with regard to inmates receiving their medications during pill call is to open the door to the housing unit and allow the nurse and accompanying deputy to enter and distribute medications to the inmates. (Doc. no. 69, Turner Aff. ¶ 9.) Defendant Turner states that she "has no involvement in whether an inmate does or does not receive his medications during pill call." (Doc. no. 67-1, Turner Statement of Material Facts ¶ 7.) Defendant Turner also states that she is unaware of any reason that Plaintiff would not have

4

received his medications on the day in question, and that, as far as she knows, he did receive his medication at the 5:00 p.m. pill call. (Doc. no. 69, Turner Aff. ¶ 10.)

The log book for Plaintiff's housing unit, whose entries for July 28, 2008 were made by Defendant Turner, indicates that pill call was conducted at 5:10 p.m. that day without incident. (Id., Ex. B.) In addition, Dr. Efobi, one of the physicians who treated Plaintiff during his confinement at the Jail, attests that "[t]here is no indication in [Plaintiff's medical] file that he did not receive his medications." (Doc. no. 63-1, Efobi Aff. ¶ 14; see also doc. nos. 65-1, 65-2, 66-1.[6])

Plaintiff has not presented any evidence of injuries suffered as a result of Defendant Turner's alleged actions; however, his amended complaint contains the general allegation that Defendant Turner's actions contributed to an "agitation [of] a chronic situation" and resulted in "swollen feet and ankle[s]," as well as "pain throughout the body, causing weakness." (Doc. no. 42, p. 3.)

### B. Facts Relating to Plaintiff's Claims Against Defendant Lee

Plaintiff's claims against Defendant Lee concern alleged delays in getting treatment from his doctors purportedly resulting from her actions. (See generally doc. no. 75.) As HSA, Defendant Lee's responsibilities "included budgeting, managing staff/client meetings, overseeing off-site appointments and daily sick call, executing monthly quality-improvement studies, maintaining of inmate medical records, and supervising the general care of inmates . . . ." (Doc. no. 63-1, Lee Aff. ¶ 7.)

---

[6]These documents contain excerpts from Plaintiff's medical record. The page numbering corresponds to the page numbers in that record.

Upon Plaintiff's arrival at the Jail, his intake information was reviewed by Dr. Efobi, who determined that his conditions were under control and prescribed medications for the continued treatment of his chronic conditions. (Doc. no. 63-2, Efobi Aff. ¶ 7.) Following his initial treatment, Plaintiff submitted Health Services Request Forms complaining of chest pains on July 17, 21, and 22, 2008. (Doc. no. 75, Ex. A.) Plaintiff asserts that "between July 23, 24, or maybe before," Defendant Lee was in charge of pill call, and that during that time he personally complained to her about his chest pain. (Doc. no. 75, Pl.'s Aff. II, p. 12.) Plaintiff maintains that he was not seen by a doctor until two and a half weeks after making these complaints. (Id.) In addition, Plaintiff submitted Health Services Request Forms on August 11, 12, and 13, 2008, complaining of an "abscess" on his gums.[7] (Id., Ex. A.) Plaintiff avers that he was not seen by a doctor regarding his abscess until eight days after he submitted his complaint forms. (Id., Pl.'s Aff. II, p. 12.)

Defendant Lee disputes the bulk of these assertions. While she acknowledges that Plaintiff submitted the Health Services Request Forms, she attests that she was not present at pill call on July 23 or 24, 2008, and that contrary to Plaintiff's assertions, he was seen by Dr. Efobi on July 17, 2008 and August 18, 2008, and was seen by Dr. Michael Rogers on July 25, 2008. (Doc. no. 63-1, Lee Aff. ¶¶ 12, 13, 15-17.)

Plaintiff's medical record and the affidavits of the doctors who treated him provide further information regarding Plaintiff's medical treatment during his confinement at the Jail. On June 19, 2008, one day after Plaintiff's arrival, Dr. Efobi reviewed Plaintiff's intake information, "including a list of his medical conditions and medications." (Doc. no. 63-2,

---

[7]In some of his filings, Plaintiff refers to this malady as a "boil" in his mouth. (E.g., Doc. no. 75, Pl.'s Aff. II, p. 12.)

6

Efobi Aff. ¶ 7; doc. no. 65-1, pp. 3, 5.) Based on his evaluation of Plaintiff's intake information and lab results, Dr. Efobi contacted the pharmacy to verify Plaintiff's prescriptions and then ordered various medications to treat Plaintiff's HIV condition, diabetes, and asthma, as well as a special diet and daily blood sugar tests to treat Plaintiff's diabetes. (Doc. no. 63-2, Efobi Aff., ¶¶ 7, 8; doc. no. 65-1, pp. 2-3.) Plaintiff's medical records indicate that he received all of these tests and medications as prescribed by Dr. Efobi. (Doc. no. 65-1, pp. 8-25.)

In addition, because of Plaintiff's HIV condition, Dr. Efobi referred Plaintiff to Dr. Rogers, an infectious disease specialist. (Doc. no. 63-2, Efobi Aff. ¶ 10; doc. no. 65-1, p. 2.) Dr. Rogers met with Plaintiff on July 25, 2008. (Doc. no. 63-3, Rogers Aff. ¶ 7; doc. no. 65-2, pp. 30-33.) Dr. Rogers states that Plaintiff did not complain of chest pains or failure to receive any of his prescribed medications during this meeting. (Doc. no. 63-3, Rogers Aff. ¶ 8; doc. no. 65-2, pp. 30-33.) Dr. Rogers counseled Plaintiff on the benefits of quitting smoking, prescribed an additional medication, and confirmed that the other medications and treatments were appropriate. (Doc. no. 63-3, Rogers Aff. ¶¶ 7, 9; doc. no. 65-1, p. 2; doc. no. 65-2, p. 32.) Dr. Rogers scheduled Plaintiff for a follow up appointment 90 days after his initial appointment, but Plaintiff was transferred from the Jail before that appointment occurred. (Doc. no. 63-3, Rogers Aff. ¶ 11.)

Furthermore, Dr. Efobi states – and Plaintiff's medical record confirms – that because of Plaintiff's complaint of an abscess on his gums, Dr. Efobi prescribed salt water mouth wash and Tylenol on August 18, 2008. (Doc. no. 63-2, Efobi Aff. ¶ 12; doc. no. 65-1, p. 2.) Plaintiff admits that he received the mouth wash and Tylenol as prescribed on August 18.

7

(Doc. no. 66-2, Ex. B, Pl.'s Resp. to Def. Lee's Req. for Admis. ¶ 17.) Plaintiff's medical record contains no indication that Plaintiff ever complained about the abscess after receiving this treatment. (See doc. nos. 65-1, 65-2, 66-1.)

On September 15, 2008, Dr. Efobi ordered several additional medications for Plaintiff's various conditions, and ordered twice daily blood sugar tests to monitor Plaintiff's diabetes. (Doc. no. 63-2, Efobi Aff. ¶ 13; doc. no. 65-1, p. 1.) Soon thereafter, Plaintiff was transferred from the Jail. (See doc. no. 9 (change of address notification filed by Plaintiff on September 22, 2008).) Both Dr. Efobi and Dr. Rogers state that in their professional opinions, to a reasonable degree of medical certainty, the care and treatment provided to Plaintiff during his confinement at the Jail met the standard of care for the treatment of patients under similar conditions, and that Plaintiff left in substantially the same condition as he arrived. (Doc. no. 63-2, Efobi Aff. ¶¶ 14, 15; doc. no. 63-3, Rogers Aff. ¶¶ 12, 13.) Moreover, Dr. Efobi opines that, "to a reasonable degree of medical certainty, any aches and pains experienced by [Plaintiff] during his incarceration at Richmond County Jail were neuropathic and/or chronic pain associated with his long-standing HIV and diabetes conditions." (Doc. no. 63-2, Efobi Aff. ¶ 16.)

As with his claim against Defendant Turner, Plaintiff has not presented any evidence of injuries suffered as a result of Defendant Lee's alleged actions; rather, the only indication of an injury suffered takes the form of an unproven allegation in Plaintiff's amended complaint that Defendant Lee's actions contributed to an "agitation [of] a chronic situation" and resulted in "swollen feet and ankle[s]," "soreness of mouth," "boils" that cause pain and interfere with eating, and "pain throughout the body, causing weakness." (Doc. no. 42, p. 3.)

8

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[8] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet

---

[8]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

9

its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## B.     Merits of Plaintiff's Claims

As noted above, Plaintiff contends that he received delayed and inadequate medical treatment due to Defendants' actions, and that Defendants were therefore deliberately indifferent to his serious medial needs in violation of his constitutional rights.[9] To prevail

---

[9]Plaintiff, who was a pre-trial detainee during the relevant time period, argues that his delayed and inadequate medical treatment was in violation the Eighth Amendment's prohibition on cruel and unusual punishment. However, a claim that a pretrial detainee has been denied adequate medical care is properly addressable under the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). The Eleventh Circuit Court of Appeals has held that "in regard to providing pretrial detainees with basic necessities as food, living space, and medical care the minimum standard allowed by the Due Process Clause is the same as that allowed by the Eighth Amendment for convicted persons." Hamm v. Dekalb County, 774 F.2d 1567, 1574 (11th Cir. 1985). Because the Eleventh Circuit has held that the minimum standard for the provision of basic necessities, including medical care, is the same for convicted prisoners under the Eighth Amendment and for

on a claim of deliberate indifference to serious medical needs, Plaintiff must show: (1) that he had an objectively serious medical need, (2) that Defendants acted with deliberate indifference to that need, and (3) that his injury was caused by Defendants' wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (noting that a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the requirement of showing an objectively serious medical need, a prisoner must show that his medical need "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To show that Defendants were deliberately indifferent to his medical needs, Plaintiff must offer proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendant disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id.

In addition, as a prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference, Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill, 40 F.3d at 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536

---

pretrial detainees under the Fourteenth Amendment, it is appropriate to examine Eighth and Fourteenth Amendment decisional law concerning Plaintiff's claim. See Lancaster v. Monroe County, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997) ("Because both Eighth Amendment cases and Fourteenth Amendment cases establish what constitutes 'deliberate indifference,' we will rely upon decisions in both types of cases.").

U.S. 730, 739 n.9 (2002); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners."). Whether such delay amounts to deliberate indifference to a serious medical need depends on the length of the delay as well as "the nature of the medical need and the reason for the delay." Farrow, 320 F.3d at 1247.

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." West, 320 F.3d at 1243 (internal quotation and citation omitted). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for

Eighth Amendment liability); Harris, 941 F.2d at 1505.

With these principles in mind, the Court turns its attention to the parties' cross motions for summary judgment on Plaintiff's claims.

### A. Plaintiff's Claims Against Defendant Turner

Plaintiff argues that summary judgment should be rendered in his favor on his claims against Defendant Turner, asserting that his allegations of her deliberate indifference to his serious medical needs is supported by evidence in the record showing that she prevented him from attending his doctor's appointment on June 23, 2008 and refused him medications on July 21, 2010. (See generally doc. no. 74.) Defendant Turner, on the other hand, argues that she is entitled to summary judgment because she did not interfere with Plaintiff's medical care, was not aware of any serious medical need, and is entitled to qualified immunity. (See generally doc. no. 68.)

Summary judgment should be granted in Defendant Turner's favor. The only evidence that Plaintiff has pointed to in support of his claims against Defendant Turner are the statements from his affidavit in which he attests that Defendant Turner took the actions alleged and the grievances he filed over the incidents. (See doc. no. 74, pp. 13-16 & Ex. A.) Accepting this evidence as true and drawing all justifiable inferences in Plaintiff's favor, his claim against Defendant Turner cannot survive summary judgment.

Assuming for the sake of argument that Plaintiff did have a serious medical need, he has not shown deliberate indifference to that need on the part of Defendant Turner. Nothing in the record supports the conclusion that Defendant Turner disregarded a serious risk to

Plaintiff's health or followed a course of action that was "more than gross negligence." See Goebert, 510 F.3d at 1326. As a tower guard, Defendant Turner's knowledge of Plaintiff's medical condition was limited to being aware that he was likely HIV-positive because of the unit in which he was housed. (See doc. no. 69, Turner Aff. ¶ 6.) She was not, however, aware of any specific risk urgently requiring that Plaintiff see a doctor as scheduled on June 23, 2008. (Id.) To the contrary, the circumstances surrounding that appointment – specifically the nurse's casual statement that she would come back later for Plaintiff – were indicative of a lack of urgency. (See id. ¶¶ 5, 6.) Moreover, far from following a "more than grossly negligent" course of conduct, Defendant Turner called to Plaintiff multiple times, giving him ample opportunity to approach the door pursuant to the the Jail's procedure for inmates to report for medical appointments. (Id. ¶ 5.)

Furthermore, while Plaintiff has asserted that Defendant Turner's conduct on June 23, 2008 and July 21, 2008 caused a delay in his treatment, he has not placed "verifying medical evidence in the record to establish the detrimental effect" of such delay, as is required to prevail on his claim. See Hill, 40 F.3d at 1188. In fact, he has not presented any evidence showing that he suffered any injury whatsoever as a result of not seeing his doctor on June 23 or not receiving his pills on July 21, and his medical records – along with the affidavits of the physicians who treated him – indicate that his condition did not worsen during his confinement at the Jail. (See doc. no. 63-2, Efobi Aff. ¶ 14; doc. no. 63-3, Rogers Aff. ¶ 13; see generally doc. nos. 65-1, 65-2, 66-1.) Consequently, Plaintiff cannot meet the requirement of showing that he suffered an injury and that Defendant Turner's conduct

caused that injury.[10] See Thomas, 614 F.3d at 1317 n.29; Goebert, 510 F.3d at 1326. Accordingly, Plaintiff has not shown a genuine dispute as to any material fact with respect to his claims against Defendant Turner;[11] Plaintiff's motion for summary judgment on those claims (doc. no. 74) should therefore be denied, and Defendant Turner's motion for summary judgment (doc. no. 67) should be granted.

### B. Plaintiff's Claims Against Defendant Lee

Plaintiff also argues that he should be granted summary judgment on his claims against Defendant Lee. Plaintiff submits that he has shown that Defendant Lee's actions caused a delay in his medical treatment such that she should be liable for deliberate indifference to his serious medical needs. (See generally doc. no. 75.) Defendant Lee contends that summary judgment should be granted in her favor because Plaintiff has not shown that she was deliberately indifferent to any serious medical need and because qualified immunity shields her from liability. (See generally doc. no. 60-1.)

Bearing the summary judgment standard in mind, Defendant Lee's motion for

---

[10]The unproven allegations from Plaintiff's complaint that he suffered swollen feet and ankles, pain throughout the body, and weakness are insufficient at the summary judgment stage for Plaintiff to carry his burden to show an injury resulting from Defendant Turner's conduct. Morris, 663 F.2d at 1034. And even assuming that he did suffer such injuries, there is no evidence that Defendant Turner's conduct caused, or even contributed to, such injuries. The only evidence pointed to by either party concerning the cause of these injuries is the affidavit of Dr. Efobi, who stated that in his "professional opinion, to a reasonable degree of medical certainty, any aches or pains experienced by [Plaintiff] during his incarceration at Richmond County Jail were neuropathic and/or chronic pain associated with his long-standing HIV and diabetes conditions." (Doc. no. 63-2, Efobi Aff. ¶ 16.)

[11]In light of the Court's conclusions regarding Plaintiff's claims against Defendant Turner, it is not necessary to reach the merits of Defendant Turner's claim of qualified immunity.

15

summary judgment should be granted. Assuming for the sake of argument that Plaintiff did have a serious medical need, he claims against Defendant Lee still fail. With regard to the abscess on Plaintiff's gums, even viewing the evidence most favorably to Plaintiff and accepting his affidavits as true, nothing in the record supports the conclusion that Defendant Lee was deliberately indifferent to Plaintiff's alleged serious medical needs because of a delay in providing Plaintiff with appropriate medical treatment. Plaintiff submitted complaints regarding the "abscess" in his mouth on August 11, 12, and 13, 2008. (Doc. no. 75, Ex. A.) Dr. Efobi prescribed a treatment for his abscess on August 18, 2008. (Doc. no. 63-2, Efobi Aff. ¶ 12; doc. no. 65-1, p. 2.) Plaintiff received his treatment the same day, and his medical records show no indication that he complained of the abscess following his August 18th meeting with Dr. Efobi. (See doc. no. 66-2, Ex. B, Pl.'s Resp. to Def. Lee's Req. for Admis. ¶ 17; see generally doc. nos. 65-1, 65-2, 66-1.) Taking into account the seriousness of the injuries complained of and the length of the delay in Plaintiff's treatment, the evidence in the record is not indicative of a delay in Plaintiff's treatment for the abscess on his gums that rises to the level of a constitutional violation. See Farrow, 320 F.3d at 1247. Moreover, this claim must fail in light of the fact that Plaintiff has not placed "verifying medical evidence in the record to establish the detrimental effect" of the delay in receiving treatment for the abscess, see Hill, 40 F.3d at 1188, and has not presented any evidence showing that he suffered any injury caused by such delay. Goebert, 510 F.3d at 1326.

The delay in Plaintiff's treatment for his complaints of chest pain is more serious, as he first complained of chest pains on July 17, 2008, and appears not to have been seen by a

doctor until July 25, 2008,[12] at which time he met with Dr. Rogers.[13] (Doc. no. 63-3, Rogers Aff. ¶¶ 7, 8; doc. no. 65-2, pp. 30-33.) Nevertheless, Plaintiff has also failed to present evidence sufficient for this claim to survive summary judgment, as he has not fulfilled the requirement of placing "verifying medical evidence in the record to establish the detrimental effect" of the delay in his medical treatment. Hill, 40 F.3d at 1188. In fact, Plaintiff has not presented any evidence showing that he suffered any injury whatsoever caused by the alleged delay in seeing a doctor regarding his chest pains. As a result, Plaintiff's claims against Defendant Lee do not satisfy the requirement of showing an injury caused by her wrongful conduct.[14] See Thomas, 614 F.3d at 1317 n.29; Goebert, 510 F.3d at 1326. Accordingly,

---

[12]The Court is aware of Defendant Lee's assertion that Plaintiff was seen by Dr. Efobi on July 17, 2008, the day he first complained of chest pains. (Doc. no. 63-1, Lee Aff. ¶ 13.) In support of this assertion, Defendant Lee cites Plaintiff's medical record. (See id. (citing doc. no. 65-1, p. 2).) However, viewing the evidence in Plaintiff's favor, the Court finds it inappropriate to conclude that he met with Dr. Efobi regarding his chest pains on July 17, 2008, as asserted by Defendant Lee. First, the document from Plaintiff's medical record cited by Defendant Lee does not establish that Plaintiff met with Dr. Efobi on July 17 – it merely contains a notation made by Dr. Efobi on that date that reads "f/u with Dr. Rogers." (Doc. no. 65-1, p. 2.) Moreover, even if that notation does somehow indicate that Dr. Efobi met with Plaintiff on July 17, it does not necessarily follow that Dr. Efobi met with Plaintiff subsequent to the submission of Plaintiff's complaint regarding chest pains; it is entirely possible that Dr. Efobi met with Plaintiff in the morning (the annotation indicates it was made at 10:55 a.m.), and then Plaintiff began experiencing chest pains later in the day. Furthermore, Dr. Efobi gives no indication in his affidavit of having met with Plaintiff on July 17, whereas Dr. Efobi does mention other appointments with Plaintiff throughout his affidavit. (See generally doc. no. 63-2, Efobi Aff.)

[13]Notably, Plaintiff did not complain of chest pains during this meeting with Dr. Rogers. (Doc. no. 63-3, Rogers Aff. ¶ 8.)

[14]As noted above, see supra note 10, the unproven allegations from Plaintiff's complaint that he suffered swollen feet and ankles, additional sores in his mouth, pain throughout the body, and weakness are insufficient at the summary judgment stage for Plaintiff to carry his burden to show an injury resulting from Defendant Lee's conduct. Morris, 663 F.2d 1034. And, as with his claims against Defendant Turner, even assuming

Plaintiff has not shown a genuine dispute as to any material fact with respect to his claims against Defendant Lee;[15] Plaintiff's motion for summary judgment on those claims (doc. no. 75) should therefore be denied, and Defendant Lee's motion for summary judgment (doc. nos. 60, 63, 65, 66) should be granted.

### III. CONCLUSION

In sum, the Court **REPORTS AND RECOMMENDS** that Plaintiff's motions for summary judgment (doc. nos. 74, 75) be **DENIED**, that each Defendant's motion for summary judgment (doc. nos. 60, 63, 65, 66, 67) be **GRANTED**, that a final judgment be **ENTERED** in favor of Defendants Turner and Lee, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 20th day of December, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

that he did suffer such injuries, there is no evidence that Defendant Lee's conduct caused, or even contributed to, such injuries. The only evidence pointed to by either party concerning the cause of these injuries is the affidavit of Dr. Efobi, who stated that in his "professional opinion, to a reasonable degree of medical certainty, any aches or pains experienced by [Plaintiff] during his incarceration at Richmond County Jail were neuropathic and/or chronic pain associated with his long-standing HIV and diabetes conditions." (Doc. no. 63-2, Efobi Aff. ¶ 16.)

[15]In light of the Court's conclusions regarding Plaintiff's claims against Defendant Lee, it is not necessary to reach the merits of Defendant Lee's claim of qualified immunity.